GEARHART, APPELLEE, *v.* COLUMBUS RY., POWER & LIGHT CO., APPELLANT.

(Decided July 5, 1940.)

Mr. *C. C. Crabbe* and Messrs. *Garek & Sillman,* for appellee.

Messrs. *Henderson, Burr, Randall & Porter* and Mr. *Lawrence D. Stanley,* for appellant.

GEIGER, J. This is the second time that a final entry in the court below has been before this court in this case.

On the first trial of this cause in the Court of Com-

mon Pleas, the court directed a general verdict in favor of the railway company. Thereupon plaintiff filed a motion for new trial, which was sustained. The judgment granting a new trial was affirmed by this court and the Supreme Court overruled a motion to certify.

In the second trial a general verdict was returned in favor of the plaintiff. The company filed motions for a judgment *non obstante veredicto* on the special findings of the jury in answer to interrogatories submitted by the company. The company filed no motion for new trial. The motions being overruled, the case is now before this court a second time on appeal by the company on questions of law.

While this court rendered three written opinions when the case was pending on the former appeal, it did not make such a statement of the issues as the present controversy seems to require and we shall therefore briefly state the issues as presented in the pleadings.

On November 30, 1936, plaintiff filed a second amended petition wherein it is alleged, among other things, that Sunbury road and East Fifth avenue are two public streets in the city of Columbus, Sunbury road running north and south and intersecting Fifth avenue; and that at the time of the accident, which was the basis of the complaint, the night was dark and frosty and the surface of Fifth avenue and the rails over which the defendant operated its electric trolley cars were icy and slippery.

The negligence complained of is, in substance, that the defendant operated its trolley at a speed of approximately 25 miles an hour; and that it neglected to apply the brakes, when it knew that a collision with plaintiff's car was imminent, in sufficient time to stop the car prior to the collision.

For a second cause of action, additional allegations are made in reference to the operation of the car,

which are to some extent repetitious of the statements made in the first cause of action. It is alleged that the north rail of the track consists of a flat surface toward the outer side and a U-shaped groove toward the inner side of the rail; that the rail and groove were imbedded in the street, projecting about an inch above the surface; and that as the defendant's car was being operated eastward on East Fifth avenue, the plaintiff was operating his automobile out of the immediate path of the approaching car when the northermost rail of the U-shaped groove obstructed the left front wheel preventing a change of course. It is asserted that the defendant was negligent in that it maintained a rail in a public street projecting approximately one inch above the surface, when it knew or should have known that the same was dangerous and would obstruct the course and guidance of an automobile, especially that of the plaintiff, by reason of which the trolley car collided with the plaintiff's automobile causing the injuries complained of.

An answer was filed by the company making certain admissions and denials, and, as a second defense, alleging that if the plaintiff was injured such injuries were the proximate result of his own negligence in running head on into the street car.

The plaintiff replied, specifically denying that his injuries were the result of his own negligence.

The jury on the second trial found for the plaintiff assessing the damages at $3,000.

At the conclusion of plaintiff's evidence and at the conclusion of all the evidence, defendant moved the court to direct a verdict in favor of the defendant on the ground that the plaintiff had shown no right to recover and the defendant, at the same time, moved to strike the second cause of action from the petition on the ground that the evidence showed that the defendant was not negligent in either the construction

or maintenance of the tracks and that the tracks were in fact in good condition.

This latter motion was sustained by the court, the judge stating that reasonable minds could not come to different conclusions as to any negligent construction of the car tracks. The motion for a directed verdict was overruled. Thereupon, before argument, the defendant submitted certain questions of fact requesting the court to instruct the jury that if it found a general verdict, especially to find upon the particular questions of fact. Special instructions were requested, which were given preceding the general charge. There is no complaint registered against the instructions, either special or general and we detect no error.

The interrogatories answered by the jury in the order in which they appear in the transcript of the docket are:

"(1) At the instant of collision, what was the speed of the streetcar in miles per hour? A. 15 miles per hour.

"(2) Prior to the collision what was the speed of the automobile as it proceeded west on Fifth avenue? A. About 20 miles per hour.

"(3) At the instant of the collision, what was the speed of the automobile? A. About 8 miles per hour.

"(4) Did Gearhart make any effort to leave the track before the collision occurred? A. Yes.

"(5) If your answer to the foregoing questions is 'Yes,' then state how far in feet did he proceed from the time he first attempted to leave the tracks until the collision occurred. A. About ten feet.

"(6) Where was the streetcar in reference to the bend of Sunbury road when Gearhart first saw the streetcar? A. About 100 feet east of Sunbury road.

"(7) How far in feet was Gearhart from the streetcar when he first saw it? A. 200 to 300 feet.

"(8) How far in feet was the site of the collision from Sunbury road? A. About 550 feet.

"(9) Prior to the collision, what was the speed of the streetcar in miles per hour as it proceeded east on Fifth avenue?   A. 15 miles per hour."

Upon the return of the verdict, the defendant filed a motion for judgment *non obstante veredicto* because;

"(1) Upon the evidence and law, the defendant is entitled to judgment in its favor notwithstanding the verdict.

"(2) The findings of fact are inconsistent and irreconcilable with the general verdict and the defendant is entitled to judgment as a matter of law on said special findings of fact, notwithstanding the general verdict."

The cause coming on upon the motion for judgment *non obstante veredicto,* that motion was overruled and upon the entry on the verdict on April 6, 1940, judgment was entered against the defendant in the sum of $3,000.

An appeal on question of law was taken from the judgment in favor of the plaintiff and against the defendant and the refusal of the court to grant judgment in favor of the defendant notwithstanding the verdict.

Errors are assigned by the defendant to the effect (1) That the court erred in refusing to grant judgment in favor of the defendant *non obstante veredicto,* for the reason that the findings of fact returned by the jury are inconsistent and irreconcilable with the general verdict in favor of the plaintiff and that the defendant was entitled to final judgment in its favor; (2) that the court erred in refusing to grant judgment in favor of the defendant *non obstante veredicto* for the reason that upon all the evidence, plaintiff was entitled to final judgment; (3) that the court erred in refusing to direct a verdict; and (4) that the defendant was entitled to judgment as a matter of law.

The issue in this case is whether the court erred in refusing to grant judgment in favor of the defendant notwithstanding the verdict of the jury. The argument

is largely based upon the fact that the special findings made at the request of the defendant are irreconcilable with a general verdict against the defendant.

We might briefly note pertinent sections and decisions.

Section 11601, General Code, provides that when, upon the statement in the pleadings or upon the evidence, one party is entitled to judgment, judgment shall be rendered by the court, although a verdict has been found against such party and whether motion to direct a verdict may have been made or overruled "but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence."

See Sections 11420-14, 11420-16, 11420-17 and 11420-18, General Code, the last section reading:

·"When a special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly."

We may inquire to what extent the finding of facts is to control the special verdict.

Any italics in the following cases are ours, unless otherwise indicated.

The seventh paragraph of the syllabus in *Schweinfurth, Admr.*, v. *C., C., C. & St. L. Ry. Co.*, 60 Ohio St., 215, 54 N. E., 89, is as follows:

"It is not the purpose of section * * * to require special findings of merely evidential facts. The 'particular questions of fact' contemplated * * * are those, the answers to which will establish ultimate and determinative facts, and not such as are only of a probative character."

*Cleveland & Elyria Elec. Rd. Co.* v. *Hawkins*, 64 Ohio St., 391, 60 N. E., 558, holds, in substance, that the purpose of the section is to elicit from the jury such special findings of fact as will test the correctness of the general verdict, if a general verdict is returned; and it requires the court, upon request, to direct an-

swers to be returned to such questions as will elicit from the jury a finding of any fact, whose legal effect may be, *when considered with other facts admitted or to be found,* to show whether the general verdict results from an erroneous application of the law. Judge Shauck, delivering the opinion of the court, says on page 397, that "the purpose is to obtain findings upon all such particular questions of fact and upon such only as will test the correctness of the general verdict, which such findings accompany. It is to provide means of ascertaining whether in the general verdict the jury have erred in the application of the law to their conclusions of fact. * * * This will extend the inquiry to every fact which is of such legal import that, *when considered in connection with other facts* admitted or to be found, it may show that the general verdict results from an erroneous application of the law. * * * Its object is to enable the court to determine, as a matter of law, whether the general verdict is right in view of the jury's conclusions upon questions of fact, not to aid the court in determining whether the verdict is contrary to the weight of the evidence."

*Davis* v. *Turner,* 69 Ohio St., 101, 68 N. E., 819, holds that for special findings to be inconsistent with the general verdict, as contemplated by the section, it must appear that the special findings are irreconcilable in a legal sense with the general verdict. See, also, *Brier Hill Steel Co.* v. *Ianakis,* 93 Ohio St., 300, 112 N. E., 1013, and *Board of Commissioners* v. *Deitsch,* 94 Ohio St., 1, 113 N. E., 745.

Paragraph two of the syllabus in the *Deitsch case* holds:

"Judgment should not be rendered on special findings of fact as against the general verdict unless such special findings, when considered together, are inconsistent and irreconcilable with the general verdict. *The evidence can not be considered in determining such conflict.*" (Italics ours.)

At page 8 the court quotes with approval the following from *Stevens* v. *City of Logansport,* 76 Ind., 498:

"The question to be decided is not whether, in the light of the evidence adduced, the general verdict is inconsistent with the facts found; the remedy in case of such an inconsistency is a new trial. But, upon the motion for judgment *non obstante,* the general verdict prevails over the special findings, *if there could have been, under the issues, proof of supposable facts, not inconsistent with those specially found, sufficient to sustain the general verdict;* or, in other words, sufficient to reconcile the general verdict with the special answers." (Italics ours.)

*Mason Tire & Rubber Co.* v. *Lansinger,* 108 Ohio St., 377, 140 N. E., 770, is to the effect that the interrogatory there submitted calls for conclusion of fact or conclusion of mixed fact and law and is not authorized by the statute.

In *Central Gas Co.* v. *Hope Oil Co.,* 113 Ohio St., 354, 149 N. E., 386, paragraph 2 of the syllabus reads:

"Where special findings of fact returned by a jury are clearly irreconcilable upon the record with the general verdict, it is error for the trial court to refuse to set aside and disregard the general verdict, insofar as such special findings are inconsistent therewith, and to give judgment accordingly." See, also, *Columbus, Delaware & Marion Electric Co.* v. *O'Day,* 123 Ohio St., 638, 176 N. E., 569, paragraph one of the syllabus.

In *Ohio Fuel Gas Co.* v. *Ringler,* 126 Ohio St., 409, 185 N. E., 553, paragraph two of the syllabus holds:

"To warrant setting aside a general verdict as inconsistent with special findings, the conflict must be clear and irreconcilable."

See, also, *Fox* v. *Conway,* 133 Ohio St., 273, 13 N. E. (2d), 124.

Without further commenting upon these opinions and the principles enunciated, it is for us to determine whether the special findings, of which there were nine,

or any of them, are so inconsistent with the general verdict as to fall within the reasons assigned by the motion for judgment *non obstante veredicto* and to be controlled by the provisions of Section 11420-18, General Code, to the effect that when a special finding of fact is inconsistent with the general verdict, the former shall control the latter and the court may give judgment accordingly.

It should be conceded without argument that a number of the interrogatories and their answers have no potency in requiring the court to set aside the general verdict by reason of such special findings. Many of them relate to speed and position of the two vehicles and are evidentiary only and are not inconsistent with the general verdict.

Interrogatories Nos. 4 and 5 seem to be the only ones that might be seriously considered as being so in conflict as to be clearly inconsistent with the general verdict.

"(4) Did Gearhart make any effort to leave the track before the collision occurred? A. Yes.

"(5) If your answer to the foregoing question is 'Yes,' then state how far in feet did he proceed from the time he first attempted to leave the track until the collision occurred? A. About ten feet."

It is urged by counsel for defendant that the situation so disclosed convicts the plaintiff of such contributory negligence as to prevent his recovery.

The court charged the jury that if it found the plaintiff Gearhart negligently failed to yield the right of way and such negligence proximately contributed to cause the collision and his injuries, then its verdict must be in favor of the defendant and against the plaintiff, even though it further found that the operator of the streetcar was guilty of negligence.

This is a fair charge upon contributory negligence asserted in this case. The jury, in the face of this charge, found for the plaintiff, thereby inferentially

holding that the plaintiff was not guilty of contributory negligence. This situation approximates that revealed in the case of *Schweinfurth* v. *Railway Co., supra,* where the court states on page 233:

"*By the general verdict* the jury found the deceased was free from negligence contributing to his death, and there is no special finding which conclusively establishes the contrary."

There are a few principles gleaned from the decisions which may be restated.

The questions of fact to be covered by a special finding are those which will establish ultimate and determinative facts and not such as are of probative value. The answers to be returned are those whose legal effect may be, *when considered with other facts found,* to show whether the verdict results from an erroneous application of law. The inquiry extends to every fact that is of such legal import that, *when considered in connection with other facts,* it will show that the verdict results from an erroneous application of the law. In order for special findings to be inconsistent, it must appear that the findings are irreconcilable with the general verdict and the conflict must be clear. Special findings override the general verdict only when both can not stand, and when the special findings can not *by any hypothesis* be reconciled with the general verdict. The evidence can not be considered in determining such conflict. The general verdict prevails over the special finding if there could have been, under the pleadings, proof of supposable facts not inconsistent with those specially found, sufficient to sustain the verdict.

On the other hand, where special findings of fact are clearly irreconcilable with the general verdict, the court must set aside and disregard the general verdict. To warrant setting aside a general verdict, the conflict must be clear and irreconcilable. In determining whether the special findings are inconsistent, the court

does not consider the evidence but only the pleadings, issues and special and general findings.

We have pointed out that only interrogatories Nos. 4 and 5 can possibly be so clearly irreconcilable with the general verdict as to justify the court in setting aside and disregarding the general verdict. We must give weight to the fact that by the general verdict, in the face of the charge given by the court, the jury found that the plaintiff was not guilty of contributory negligence. We may briefly note the testimony of the plaintiff, which may be summarized as follows:

The plaintiff on the evening in question was driving alone in a westerly direction on East Fifth avenue in his model T Ford. When he turned west off Nelson road onto Fifth avenue, a motor car pulled out in front of him without a tail light and he pulled over to the left and traveled westward with the left wheel just within the north rail of the car track, and when he got down near Sunbury road the streetcar had come around the bend. When he saw it, he tried to turn out of the car track but his car seemed to swerve and slide and when he was sliding he could not get out of the car track. He threw his car into low and tried to turn the wheels to the left and then to the right to get out, but this did not help a bit. He was traveling westward about 15 miles an hour when the motor car pulled out from the curb, after which he traveled about 18 miles an hour, saw the street car 200 feet ahead and started to turn out just as he saw it. After he went into low gear and started to get out of the car track, he traveled seven or eight feet, during which time the streetcar did not slow down.

There was, of course, cross-examination and evidence on behalf of the defendant which in a measure contradicted the plaintiff's testimony and, as argument is based upon the mathematical calculations as to speed, the special findings may also contradict the statement of plaintiff.

Counsel make much of the argument that within a distance of ten feet it would be impossible for the driver of a car to turn his car out of the course of the streetcar and that his failure to make the attempt at a greater distance from the approaching streetcar was contributory negligence.

It might be pointed out that the plaintiff's testimony is to the effect that he was driving entirely outside the north rail until a car moved from the curb in front of him, which required him to move over into the tracks with his left wheel, just south of the north rail. There is no evidence indicating that he turned further south, or that he brought the entire body of his car between the two rails; only his left wheel was just south of the north rail. The trouble seems to have arisen when he attempted to turn out, which resulted in failure for the reason that he could not bring his left front wheel across the north rail. He then turned to the left in order to make the turn, but due to the condition of the rail and the street, he was unable to do so until struck.

We see nothing in this situation that compels us to find that the answers to the interrogatories, Nos. 4 and 5, or any other of the special findings, are clearly inconsistent with the general verdict, as such necessary inconsistency has been defined in the authorities we have cited.

This view compels us to hold adversely to defendant on its first and second assignments of error.

The third assignment is that the court erred in refusing to direct a verdict at the conclusion of all the evidence. When this matter was before us on the former hearing, the court, in its decision of the 5th of May 1939, reviewed the then extant cases touching upon a directed verdict. The substance of those cases is that whenever from conflicting evidence it becomes necessary to weigh the same to determine an ultimate fact upon which different minds might reasonably arrive at different conclusions, it is the province of the

jury to perform that function and it is reversible error for the court to invade the province of the jury, but that where, upon all the evidence, reasonable minds can come to but one conclusion, it is the duty of the court, if requested, to direct a verdict accordingly. We then asked: ''Considering the evidence in this case most strongly in favor of the plaintiff, could reasonable minds come to but one conclusion?'' We held that it was not error to refuse to direct a verdict. The case has been retried resulting in a verdict for the plaintiff and the matter is again before us on the question as to whether the court erred in refusing to direct a verdict. The evidence is substantially the same. Counsel for defendant point out the fact that, in spite of our former opinion, we are now at liberty to reverse ourselves as there is no such matter in Ohio jurisprudence as the ''law of the case'' as held in *N. Y. Life Ins. Co.* v. *Hosbrook,* 130 Ohio St., 101, 196 N. E., 888, reversing *Gohman* v. *City of St. Bernard,* 111 Ohio St., 726, 146 N. E., 291.

Counsel's argument is quite convincing upon this point, if we now arrive at the conclusion that our judgment as formerly stated was erroneous.

As a matter of fact, we are now of the same opinion as we were then, that the case should have been submitted to the jury and, that having now been done, we do not feel that in view of our former and present opinion we would be justified in reversing ourselves and holding that the court was in error in refusing to direct a verdict. We must therefore hold adversely to defendant in its third assignment to the effect that the court erred in refusing to direct a verdict at the conclusion of all the evidence.

The fourth assignment is to the effect that the defendant was entitled to judgment as a matter of law upon the pleadings *and the evidence.* This assignment would require us to weigh the evidence and to reverse on the ground that the verdict was against the weight

thereof. There having been no motion for new trial filed in this case, we may not weigh the evidence to determine whether the verdict was against the weight thereof and the fourth assignment must fail.

The judgment of the court below is affirmed.

*Judgment affirmed.*

HORNBECK, P. J., concurs.
BARNES, J., dissents.